## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RANDALL T. KURTEN,           )
           Plaintiff,    )
      v.            )    Civil Action No. 3:04-20J
                 )
HANGER PROSTHETIC and,    )
ORTHOTICS, INC., formerly known as  )
TEUFEL ASSOCIATES,      )
           Defendant.    )

## MEMORANDUM OPINION AND ORDER

GIBSON, J.

This case comes before the Court on Hanger Prosthetics and Orthotics, Inc., formerly known as Teufel Associates (hereinafter "Defendant"), Motion for Summary Judgment (Document No. 14) pursuant to Federal Rule of Civil Procedure 56. In consideration of the Defendant's Motion for Summary Judgment, Randall T. Kurten's (hereinafter "Plaintiff") Response to Motion for Summary Judgment (Document No. 20), and the record in the case *sub judice*, the Court shall deny the Defendant's Motion for Summary Judgment for the following reasons.

**JURISDICTION**

Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1331 based on federal question jurisdiction. Specifically, the Plaintiff has brought a claim under the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12111, *et seq.* Jurisdiction is also invoked pursuant to 28 U.S.C. § 1343(4); and a notification of dismissal and right to sue letter was issued by the Equal Employment Opportunity Commission on or about December 22, 2003. (Document No. 1, Exhibit A).

**FACTUAL and PROCEDURAL BACKGROUND**

The Plaintiff was employed by the Defendant for approximately ten years from May 1993 until April 19, 2003. (Document No. 21). Initially hired by Teufel Associates in 1993, the Plaintiff performed the duties of an orthotist[1]. (Document Nos. 13, 22, Exhibit B). Some of his duties as an orthotist included "measuring patients for braces, fitting braces, and providing in-service instruction to nursing staffs, therapists and students." *Id*.

When the Plaintiff was hired by Teufel Associates, the Plaintiff informed Robert Teufel (hereinafter "Teufel"), then owner and manager of the area practice offices of Teufel Associates, that he "had a non-job related disability which required reasonable work accommodations." (Document No. 21). Specifically, the Plaintiff told Teufel that on May 22, 1979, the Plaintiff was involved in a car accident and sustained head trauma injury. *Id*. The Plaintiff also confided that in June 1979, he was diagnosed with cognitive disabilities as a result of the closed head trauma injury. *Id*.

The Plaintiff asserts that one of the manifestations of his cognitive disabilities is limited memory. (Document No. 21). For example, the Plaintiff states that when he is pressured, he does not remember anything. (Document No. 15, Exhibit A, p. 69). Some of this pressure arises when the Plaintiff observes "tons of patients waiting for [him]". *Id*. Consequently, as pressure mounts, the Plaintiff claims that his short term memory fails, and he does not remember "things that [he] should be picking up on." *Id*. at p. 70.

---

[1]Orthotics is defined as "[t]he science that deals with the use of specialized mechanical devices to support or to supplement weakened or abnormal joints or limbs. Also called orthetics." *The American Heritage® Stedman's Medical Dictionary*, 2nd Edition Copyright © 2004 by Houghton Mifflin Company.

The Plaintiff also states that he experiences gaps in his long term memory. (Document No. 15, Exhibit A, p. 70). For instance, the Plaintiff does not remember anything from his childhood. *Id*. Indeed, from week to week, the Plaintiff claims that he does not remember certain things. *Id*. at pp. 70-71. The Plaintiff also states that his daily life is affected by his cognitive disabilities in that he often has difficulty interacting with others because he is unable to recall recent or distant events during conversation. (Document No. 21). Nevertheless, the Plaintiff is able to perform the day to day functions of maintaining a household. (Document No. 15, Exhibit A, p. 51). For example, the Plaintiff cuts the grass, performs manual tasks around the house, and pays the bills. *Id*. Additionally, the Plaintiff states that despite his cognitive disability, he was able to graduate from high school and continue his education to become a certified orthotics technician. *Id*.

In September of 1985, the Plaintiff received a diploma for completing 900 hours of schooling and testing in occupational proficiency. (Document Nos. 21, 15, Exhibit A, p. 55). In 1989, the Plaintiff passed "the test necessary to acquire a Certificate of Occupational Proficiency for North East Metro Technical Institute."[2] (Document No. 21). Later in January of 2000, the Plaintiff took a practical exam and written exam to become a registered technician. (Document No. 15, Exhibit A, p. 56).

The Plaintiff states that during his employment while Teufel was his supervisor from 1993 through the summer of 2001, the Plaintiff communicated with Teufel about how his cognitive disability affected his ability to perform his job. (Document No. 15, Exhibit A, p. 79). Specifically, during conversations between the Plaintiff and Teufel, the Plaintiff stated that Teufel

---

[2]The Court notes that although the Plaintiff was not a registered technician at the time he was hired by Teufel in May of 1993, the Plaintiff was able to pass written and practical tests to become a certified orthotist. (Document No. 21).

acknowledged the need for a tape player to help the Plaintiff detail his patient progress notes. *Id.* Consequently, although the Plaintiff and Teufel discussed these accommodation, "nothing ever got accomplished." *Id.*

During Plaintiff's employment, while Teufel was Plaintiff's supervisor, two performance reviews indicate that Plaintiff's performance ratings were "Good" or "Very Good" on all criteria. (Document No. 21). Additionally, there is no evidence that Plaintiff was ever given a poor performance rating, or that he was unable to perform the duties of his position as an orthotist. *Id.*

In March of 1998, Teufel sold Teufel Associates to Hanger Prosthetic and Orthotics, Inc. (hereinafter "Hanger"). (Document No. 13). From March 1998 until approximately the summer of 2001, Teufel remained as the area practice manager and supervisor for Hanger. *Id.* Then in 2001, Gary Reinhold (hereinafter "Reinhold") became the Plaintiff's supervisor. (Document No. 21). From the time the Plaintiff was hired by Mr. Teufel until 2001, when Mr. Teufel was replaced as area practice manager by Mr. Reinhold, the Plaintiff "was provided with some work accommodations." *Id.* For example, the Plaintiff was provided with an office assistant and a dictaphone. (Document No. 21). Specifically, the "office assistant would complete patient paperwork, would schedule patients, and would assist with patient notes." *Id.* The dictaphone also helped the Plaintiff to memorialize conversations with patients so that the Plaintiff did not forget scheduling matters. *Id.*

When Reinhold assumed the supervisory role, the Plaintiff asserts that Plaintiff's accommodations were "no longer reasonably maintained." (Document No. 21). In particular, the Plaintiff claims that the "individuals acting as his office assistants were constantly changing." *Id.* From approximately March of 1998 until April of 2002, the Plaintiff was provided with six office

4

assistants to ensure that paperwork, scheduling, and notes were properly preserved and organized. (Document No. 21). Although provided these accommodations, the Plaintiff claims that the short-lived employment of these six assistants did not meet the reasonable accommodation standards of the ADA. *Id.* More specifically, the Plaintiff notes the short employment histories of the six assistants as follows:

> (1) [Assistant at] East Shore Office, left go approximately May 1999; (2) [Assistant at] West Shore office, left in December 2000; (3) [Assistant at] Elizabethtown Office, January to August 2001; (4) [Assistant at] West Shore office, left in December 2001; (5) [Assistant at] East Shore office, left in January 2002; and (6) [Assistant at] Elizabethtown Office, until April 2002.

(Document No. 21). Consequently, the Plaintiff alleges that the failure to provide a consistent assistant to handle his scheduling matters did not conform to Plaintiff's request for accommodation. *Id*

The Plaintiff also alleges that his termination in April of 2002 was the result of Reinhold's discriminatory animus regarding the Plaintiff's cognitive disabilities. (Document No. 21). According to the Plaintiff, the performance evaluations provided by the Defendant as reasons for terminating the Plaintiff are the direct consequence of Defendant's failure to make reasonable accommodations for his disability. For example, the first memorandum of August 17, 2000 refers to Plaintiff's failure to deliver a brace at Chambersburg Hospital. *Id.* A second memorandum of August 23, 2001 refers to Plaintiff almost missing an "in service" at Carlisle Hospital. *Id.* These and other conclusions drawn by the Defendant "that Plaintiff must have forgotten something, displayed poor competence, or was incapable of performing the job", are allegedly false conclusions drawn by the Defendant and improperly acted upon by dismissing the Plaintiff from employment. *Id.*

5

On February 2, 2004, the Plaintiff filed a Complaint against the Defendant, alleging that the Defendant denied equal employment opportunities to the Plaintiff because of the Plaintiff's disability in violation of 42 U.S.C.S. Section 12112(a). (Document No. 1).

On February 1, 2005, the Defendant filed a Motion for Summary Judgment, asserting that the Plaintiff's claim should be denied as a matter of law for the following reasons: (1) Plaintiff has not established that he is "disabled" under the ADA; (2) Plaintiff was discharged for a legitimate, non-discriminatory reason; and (3) Plaintiff cannot prove pretext for a claim of intentional disability discrimination. (Document Nos. 14 & 17).

**SUMMARY JUDGMENT STANDARD**

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248-49. In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents

6

a genuine dispute regarding material facts so as to require submission of the matter to a jury for resolution of the factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

To demonstrate entitlement to summary judgment, the moving party is not required to refute the essential elements of the cause of action. The moving party needs only to point out the absence or insufficiency of the evidence offered in support of those essential elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once that burden has been met, the non-moving party must identify affirmative evidence of record that supports each essential element of his cause of action. A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *See id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

Accordingly, it is on this standard set forth above that the Court has reviewed Defendant's Motion for Summary Judgment.

## DISCUSSION

### A.    Discrimination Claims

The ADA makes it unlawful, *inter alia*, for an employer to discriminate "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  In order to advance an ADA  discrimination claim, a plaintiff must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).  A plaintiff can meet this burden by presenting indirect evidence of discrimination that satisfies the three-step framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and clarified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981),[3]  or a plaintiff can "present direct evidence of discrimination that meets the requirements of Justice O'Connor's controlling opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)". *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002); *see also Walden v. Saint Gobain Corp.*, 323 F.Supp.2d 637, 644 n.24 (E.D. Pa. 2004).

In the case *sub judice*, the parties have provided the Court with memoranda of law focusing only on a pretext theory of discrimination.  A mixed-motive theory of discrimination is not

---

[3]Although the Court will not revisit its prior examination of discrimination claims brought pursuant to the burden shifting analysis presented In *McDonnell* and *Burdine*, the Court observes its previous analysis conveyed in *Bequeath v. L.B. Foster Co.*, 367 F.Supp.2d 779, 785 n. 3 & n. 4 (W.D. Pa. 2005).

addressed by either party. Therefore, inasmuch as the Plaintiff at this time has attempted to prove his disability discrimination claims under a pretext theory through the use of indirect evidence, this Court's analysis will focus on the three-step, burden shifting analysis established in *McDonnell Douglas*, and later clarified in *Burdine*.

**B.     Pretext Theory of Discrimination: Indirect Evidence**

Pursuant to the framework set forth in *McDonnell Douglas/Burdine*, step one requires an ADA plaintiff alleging unlawful termination "to present evidence sufficient for a reasonable trier of fact to find each element of a prima facie case." *Fakete*, 308 F.3d at 338 n.3. Accordingly, the plaintiff must demonstrate the following by a preponderance of the evidence: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; and (3) he has suffered an adverse employment decision because of the discrimination. *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999). If a plaintiff establishes a prima facie case of discrimination, then the plaintiff reaches step two of the *McDonnell Douglas/Burdine* framework.

Under step two, the burden of production shifts and the defendant must present evidence to rebut an inference of wrongdoing with evidence of a legitimate, non-discriminatory or non-retaliatory reason for the action taken. *Peter v. Lincoln Technical Institute, Inc.*, 255 F.Supp.2d 417, 424 (E.D.Pa. 2002); *see also Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 (3d Cir. 1996). If the defendant satisfies its burden and successfully rebuts an inference of wrongdoing with evidence of a legitimate, non-discriminatory reason for the action taken, then the plaintiff reaches step three.

Under step three, the burden of production shifts back to the plaintiff [4] who must present evidence of pretext "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108, 1113 (3d Cir. 1997)(quoted in *Fakete*, 308 F.3d at 338); *see also Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). In order to discredit the defendant/employer's proffered reason for discharging the employee, the plaintiff/employee must adhere to the Third Circuit's analysis regarding proof of pretext to show that discrimination existed:. . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the . . . plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)) (emphasis in original) (cited in *Kohn*, 58 F.Supp.2d at 406). Consequently, the "burden of proof or risk of non-persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the [plaintiff]." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 n.4 (3d Cir. 1995)(citing *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093); *see also Barber v. CSX Distrib. Servs.*, 68 F.3d 694,

---

[4]The plaintiff, of course, always retains the burden of persuasion.

698 (3d Cir. 1995).[5]

In the case *sub judice*, the Plaintiff alleges that because of his disability, he was unlawfully discriminated against by the Defendant in the following ways:

(a)   The reasons given for Plaintiff's discharge were a mere pretext for unlawful discrimination in that other non-disabled employees were not discharged, but only received "verbal warnings"[;]

(b)   The reasons provided by the Defendant for Plaintiff's discharge were, in fact, untrue and that the Plaintiff's job performance was at least comparable, if not superior to other similarly situated [Board Certified Orthotists] who are not disabled; and

(c)   By failing to provide a reasonable accommodation for the Plaintiff, i.e., an Office Assistant specifically assigned to the Plaintiff which would have provided consistency, but was not provided leading to erratic performance.

(Document No. 1). Furthermore, the Plaintiff claims that the Defendant would not have sustained any undue hardship by providing reasonable accommodation in the form of a consistently employed office assistant. *Id.*

Conversely, the Defendant argues that Plaintiff cannot set forth a prima facie claim under the ADA because Plaintiff has not established that he is a disabled person within the meaning of the ADA. (Document No. 14). The Defendant also asserts that the Plaintiff was discharged for the legitimate, non-discriminatory reason that he could not appropriately perform the duties of his job. (Document No. 17). Furthermore, the Defendant claims that the Plaintiff is unable to prove pretext with regard to Defendant's proffered reasons for terminating the Plaintiff's employment. *Id.* The Court shall address each of Defendant's arguments raised in its Motion for Summary Judgment.

---

[5]In *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 321 (3d Cir. 2000), the Third Circuit cautioned against granting summary judgments in favor of employers when intent is at issue, particularly in discrimination and retaliation cases.

## C.     ADA Prima Facie Case

The ADA defines disability as "(a) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2).[6]  In the Plaintiff's Complaint, the Plaintiff relies on the first prong of the ADA definition of disability to assert his claim against the Defendant. (Document No. 1).

The Defendant argues, however, that Plaintiff's ADA claim fails because Plaintiff cannot establish that he was disabled; therefore, Plaintiff cannot establish that he is a member of a protected class. (Document No. 14).  Additionally, the Defendant asserts that the "Plaintiff has merely submitted evidence of his medical diagnosis . . . without any actual medical or other evidence to substantiate his impairment. This is legally insufficient." (Document No. 17).  Thus, the Court first addresses whether the Plaintiff's failure to provide medical evidence regarding his cognitive disability impairment will prevent the Plaintiff from establishing a prima facie claim of disability under the ADA.

## 1.     Plaintiff's Failure to Submit Medical Evidence

Initially, the Court observes that "[i]n order to establish disability status, a plaintiff must do more than 'merely submit evidence of a medical diagnosis of an impairment.  Instead, [he must prove] a disability by offering evidence that the extent of the limitation in terms of [his] own experience . . . is substantial.'" *Peter v. Lincoln Technical Institute, Inc.*, 255 F.Supp.2d 417, 429

---

[6]The Court observes that "[b]ecause the ADA does not define many of the pertinent terms, [the Court is] guided by the Regulations issued by the Equal Employment Opportunity Commission to implement Title I of the Act." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143 n. 4 (3d Cir. 1998)(en banc)(citing 42 U.S.C. § 12116 (requiring the EEOC to implement said Regulations))(quoted in *Emory v. AstraZeneca Pharmaceuticals LP*, 401 F.3d 174, 180 n. 4 (3d Cir. 2005)).

(E.D. Pa. 2002)(*quoting Toyota Motor Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691-692, 151 L.Ed.2d 615 (2002)).

The Court also notes that "[t]he extent to which medical evidence is required to establish a plaintiff's prima facie case depends on the extent to which the alleged impairment is within the comprehension of the lay jury."[7]  *Peter*, 255 F.Supp.2d at 429 (*citing Marinelli v. City of Erie Penn.*, 216 F.3d 354, 360 (3d Cir. 2000)).  Ultimately, "[c]ourts must examine evidence of the impact of an impairment on a plaintiff's ability to perform major life activities on an individualized, case-by-case basis."  *Peter*, 255 F.Supp.2d at 429 (*citing Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)).

In the case *sub judice*, the record indicates that the Plaintiff was diagnosed on May 22, 1979 with "Major Head injuries" requiring "Physical Therapy".  (Document No. 15, Exhibit A). The record also reflects that the Plaintiff received continued "Cognitive Retraining" over a "Long Period [of] Rehabilitation".  *Id.*  Indeed, the Plaintiff has testified to the short-term memory limitations that he experiences, as well as the long-term memory failures that he lives with on a daily basis.  *Id.*  The Plaintiff also testified that his wife asks him questions about recent events because there are times when the Plaintiff does not recall "things that happened last week".  *Id.* at p. 70.

The Court also observes that memoranda provided in the record documenting meetings

---

[7]As the District Court noted in *Peter, supra,* "medical evidence would not be necessary to establish a disability as obvious as a missing arm, [citations omitted], or arm and neck pain resulting from an injury caused by a truck accidence, [] but would be necessary to establish that deep vein thrombosis (which may cause a thinning of the blood) substantially interferes with a plaintiff's major life activities sufficiently to constitute a disability." *Peter,* 255 F.Supp.2d at 429 (*citing Lakota v. Sonoco Products Company,* No. CIV.A. 00-30219-FHF, 2002 WL 596211 (D.Mass. Apr. 4, 2002)).  Accordingly, the Court in the case *sub judice* must focus on the alleged cognitive disability and whether it is within the comprehension of a lay jury.

between the Plaintiff and Reinhold evidence symptoms of the Plaintiff's cognitive disability as it was described to Reinhold. (Document No. 15, Exhibit A). For example, in a November 21, 2001 memorandum "follow[ing] up from [the] last meeting held October 3, 2001", Reinhold documented the Plaintiff and Reinhold's discussion regarding the Plaintiff's "substandard job performance as talked about on October 3, 2001." *Id*. Reinhold memorialized the discussion as follows:

> We asked [the Plaintiff] what the company could do for him to help improve his job performance. He stated he needs a consistent office administrator to work with him. [The Plaintiff] stated due to an auto accident he had internal head trauma and was in a coma for a couple days. He had to learn to walk again and had speech issues. Most of these problems are resolved except his cognitive issues. It is very difficult for him to remember things, or when he reads to understand what is on paper, or for him to write his thoughts on paper, such as his progress notes. We have gone over the "SOAP" notes with [the Plaintiff] but he feels it could take at least 6 months to fully comprehend the instructions and put it on paper for each patient. [The Plaintiff] feels with more time he will be able to grasp the concept. When [the Plaintiff] took his BOC/O exam he had another person sit with him to help read the questions. [The Plaintiff] requested ABC do this for his ABC exams but they would not honor his request so the outcome was not being able to pass the ABC exams. [The Plaintiff] stated that he still has to take charts home at night and spends about 2 hours per night documenting charts. We asked [the Plaintiff] not to take the charts home because of patient confidentiality issues. But due to [the Plaintiff's] cognitive issue he can't get charts done at time of patient's visits and with work load. We will authorize this for next couple of weeks and re-evaluate situation. [The Plaintiff] felt if he could possible dictate his notes and have someone transcribe his notes this would be more helpful and also save time charting. He feels he would be able to comply with the "SOAP" notes better.
>
> At this time [the Defendant] will work with [the Plaintiff] and extend to him his three requests: (1) consistent office administrator, (2) dictation, and (3) more time, possibly up to 6 months.

(Document No. 15, Exhibit A).

Based upon the above-mentioned facts, the Court determines that the record in the case *sub judice* which sets forth the Plaintiff's diagnosis of "closed head trauma-cognitive issue" in

June of 1979, Plaintiff's testimony regarding the short-term and long-term effects that his cognitive disability has on his memory, and memoranda provided in the record documenting meetings between the Plaintiff and Reinhold regarding symptoms of the Plaintiff's cognitive disability provide sufficient evidence for a lay jury to decide that the Plaintiff's cognitive disability and that the limitations it presents are severe enough to constitute a disability. In other words, although a medical diagnosis may provide technical facts regarding the Plaintiff's condition, the Court observes that limited short-term and long-term memory recall is "among those ailments that are least technical in nature and most amenable to the comprehension by a lay jury." *Marinelli*, 216 F.3d at 361 (quoted in Peter, 255 F.Supp.2d at 430). Accordingly, the Court rejects the Defendant's argument that the Plaintiff's evidence to substantiate his impairment is legally insufficient.

**2.    Plaintiff's Disability under the ADA**

Next, the Court addresses whether the Plaintiff can establish a prima facie claim of disability discrimination under the ADA.   As mentioned above, the Plaintiff must be able to establish that (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; and (3) he has suffered an adverse employment decision because of the discrimination.

In the case *sub judice*, the Plaintiff has set forth his disability claim pursuant to the first prong of the ADA definition of disability, which provides that a person is disabled if he has "(a) a physical or mental impairment that substantially limits one or more major life activities". 42 U.S.C. § 12102(2).   The Court observes that in order to determine whether the Plaintiff is disabled under the first prong of the disability definition, the Court must conduct a three-step

inquiry as follows:

> First, the court must determine whether the plaintiff's condition is a physical or
> mental impairment.[8]  Second, the court must identify a life activity affected by the
> impairment and determine whether it constitutes a 'major life activity.'  Finally, the
> court must determine whether the plaintiff's impairment had a substantial limit on
> the identified major life activity.

*Sever v. Henderson* --- F.Supp.2d ---, 2005 WL 1940786, *6 (M.D. Pa. 2005).  Moreover, the

Court should make these determinations "as of the time the adverse employment action was

taken."  *Id; see EEOC v. Stowe-Phar Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000).

The Plaintiff argues that his cognitive impairment has affected his daily life in the

following ways:

> [H]e often ha[s] difficulties interacting with others because they would often ask him
> about recent and more distant events he could not recall because of his disability.
> Virtually every area of Plaintiff['s] day to day life is affected by his disability.  The
> Plaintiff has suffered . . . from this cognitive disorder for more than 25 years.

(Document No. 21).  However, the Defendant disputes that the Plaintiff's cognitive impairment

substantially limits his life in the major life activities of interacting with others and with working.[9]

Specifically, the Defendant asserts that the Plaintiff fails "to describe in any way or provide any

evidence regarding how he is affected by his impairment as compared to the average person in

general."  *Id.* at pp. 6-7.

Pursuant to the analysis adopted by the Third Circuit, the Court "must first determine

whether the plaintiff is significantly limited in a life activity other than working."  *Peter*, 255

---

[8]The Court notes that a "mental impairment" is defined as "[a]ny mental or psychological disorder, such as
mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R.
§ 1630.2(h)(2); *Sever*, 2005 WL at *6.

F.Supp.2d at 432 (*citing Mondzelewski v. Pathmark Stores, Inc.* 162 F.3d 778, 783 (3d Cir. 1998)). "Only if the court finds that this is not the case should it move to considering whether plaintiff is substantially limited in the major life activity of working." *Id.* Accordingly, the Court addresses whether the Plaintiff can establish that he is substantially limited in a life activity other than working.

a.      **Substantially Limited in Major Life Activity: Interacting with Others**

In order for an individual to be substantially limited in a major life activity, the plaintiff must establish that he is "[u]nable to perform a major life activity that the average person in the general population can perform" or that he is "[s]ignificantly restricted as to the condition, manner, or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1) (cited in *Peter*, 255 F.Supp.2d at 432). Pursuant to the Plaintiff's cognitive impairment claims in the case *sub judice*, the Court observes that in *Taylor v. Phoenixville School District*, the Third Circuit determined that thinking is a major life activity. *Taylor*, 184, F.3d at 307; *see also Collins v. Prudential Inv. and Retirement Services*, 119 Fed.Appx. 371, 374 n. 2 (3d Cir. 2005). Additionally, in *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 569 (3d Cir. 2002), the Third Circuit determined that "general cognitive functions, such as concentrating and remembering, are major life activities."[10] *Collins*, 119 Fed.Appx. at 374 n. 2; *see also Department of Health and Human Services Rehabilitation Act Regulations*, 45 C.F.R. § 84.3(j)(2)(ii) (listing examples of major life activities, including learning

---

[10]The Court also observes that a "major life activity" refers to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

17

and working).   Accordingly, the Court addresses the Plaintiff's ADA claim pursuant to the EEOC's interpretive guidelines for determining whether a plaintiff is substantially limited in his ability to perform a major life activity.  *See Peter*, 255 F.Supp.2d at 431; *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778 (*citing* 29 C.F.R. Pt. 1630, App. § 1630.2(j)).

Although Plaintiff claims that he is substantially limited, or at least that he "often ha[s] difficulties interacting with others" because he has difficulty remembering events, the Plaintiff does not offer any argument  or evidence in the record to support his claim.  (Document No. 21). Nevertheless, the Court observes that Plaintiff's omission in his brief does not doom Plaintiff's complaint, and the Court briefly considers Plaintiff's claim as to the major life activity of remembering and interacting with others.

As the Third Circuit observed in *Peter v. Lincoln Technical Institute, Inc., supra*, the Third Circuit is "generally unwilling to take a narrow view of what constitutes a major life activity" although "talking and interacting with others is not universally recognized as a major life activity." *Peter,* 255 F.Supp.2d. at 432.  Therefore, since "[c]ommunication and sociability problems cover a broad spectrum of severity," the Third Circuit determined that the best approach "to sort out minor socialization difficulties is by using the substantial impairment test rather than to decide that talking and interacting with others is not a major life activity." *Id.* at 432.  Accordingly, this Court will examine the Plaintiff's social difficulties by applying the substantial impairment analysis.

A plaintiff is substantially limited in the activity of interacting with others "only where an individual's socialization is 'characterized on a regular basis by severe problems such as high levels of hostility, social withdrawal, or failure to communicate when necessary.'" *Peter*, 255 F.Supp.2d at 433 (*quoting Olson v. Dubuque Cmty. Sch. Dist*. 137 F.3d 609, 612 (8th Cir. 1998)).

18

In order to support such a claim, a plaintiff must provide evidence of "more than mere difficulty in getting along with coworkers, irritability or tempermentality." Peter, 255 F.Supp.2d at 433 (quoting McAlindin v. County of San Diego, 192 F.3d 1226, 1235 (9th Cir. 1999)). However, a plaintiff need not "demonstrate a complete inability to communicate and interact with others." *Peter*, 255 F.Supp.2d at 433 (*citing Bennett v. Unisys Corporation*, No. 2:99CV0446, 2000 WL 33126583, at *5 (E.D. Pa. Dec. 11 2000)).

The Court observes that the Plaintiff in the case *sub judice* merely offers testimonial evidence that he often has difficulty interacting with others. (Document No. 21). However, the Plaintiff fails to present other reports or factual evidence to support his claim that he is substantially limited in his daily interaction with others. In fact, the Court observes that the Plaintiff provided documentation where he stated that a major function he is able to perform without accommodation is his "[i]nteraction with health care professionals to coordinate patient care through the use of Orthoses . . ." (Document No. 15, Exhibit A). Accordingly, the Court determines that the Plaintiff's testimony and the factual evidence in the record does not rise to the level of a substantial limitation on a major life activity of interacting and communicating with others. Therefore, taking the evidence in the light most favorable to the Plaintiff, the Court finds that the Plaintiff cannot establish that he is disabled based upon his difficulties in interacting with others.

**b.      Substantially Limited in Major Life Activity of Working**

Turning to Plaintiff's claim that he is disabled based upon a substantial limitation in the major life activity of working, the Court observes that although the Supreme Court has "questioned whether working is a major life activity, *Sutton v. United Air Lines*, 527 U.S. 471, 492, 119 S.Ct.

19

2139, 144 L.Ed.2d 450 (1999), the Third Circuit presently recognizes working as a major life activity. *Mondzelweski,* 162 F.3d at 783 (cited in *Peter,* 255 F.Supp.2d at 432, n. 5).

The Third Circuit has stated that "[t]o be limited in the major life activity of working, 'one must be precluded from more than one type of job, a specialized job or a particular job of choice.'" *Peter,* 255 F.Supp.2d at 434 (*quoting Sutton v. United Air Lines,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). Indeed, the "EEOC regulations specify that the inability to perform a single, particular job does not constitute a substantial limitation on working." 29 C.F.R. § 1630.2(j)(3)(i)(cited in *Peter,* 255 F.Supp.2d at 434). "Furthermore, in an ADA case, the plaintiff bears the burden of establishing that due to [his] impairment, [he] is limited in [his] ability to perform either a class of jobs or a broad range of jobs in various classes 'as compared to the average person having comparable training, skills and abilities.'" *Peter,* 255 F.Supp.2d at 435 (*quoting Mondzelewski,* 162 F.3d at 784). Accordingly, a "court must consider an individual's training, skills and abilities in order to evaluate whether their particular ailment constitutes, for that particular person, a significant limitation on employment." *Id.*

The Court also observes that a mental impairment must "be permanent or long-term." *Gagliardo,* 311 F.3d at 569 (citing 29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii)(2001)); *see also Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). For example, the regulations list several factors for evaluating whether someone is "substantially limited"; "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

20

The Defendant asserts that the Plaintiff's alleged cognitive impairments should be viewed not only in the context of his interactions with others, but also "in the context of many other areas and achievements in his life . . . ." (Document No. 17). For example, "despite the limitations on his memory, Plaintiff nevertheless was able to obtain a diploma in 1985 to become an orthotics technician", "[h]e was able to complete 900 hours of schooling and testing to become an orthotics technician", and he "subsequently passed the written and practical exams necessary to become ABC certified as a registered technician." *Id.* The Defendant also notes that the Plaintiff has admitted that he owns his own home, performs manual work on his home, and he takes care of the bills for the household. *Id.* Furthermore, regarding the Plaintiff major life activity of working, the Defendant asserts that "there are no limitations or restrictions placed upon his job by any physician as [a] result of his impairment." *Id*

In the case *sub judice*, the Plaintiff has offered evidence to refute Defendant's claims, and the Plaintiff argues that he is substantially limited in the major life activity of working. For example, the Plaintiff has testified that during the approximately ten years working for the Defendant, he has had several conversations with both Teufel and Reinhold regarding his need for office assistants and a dictaphone in order to properly schedule patient care and consistently note patient progress in their charts. (Document No. 15, Exhibit A). More specifically, when compared to his co-workers, the Plaintiff asserts that he requires extra time to review patient charts, an assistant to schedule patient care, and a dictaphone to memorialize patient issues as they arise during patient appointments. *Id.*

The Plaintiff also directs the Court's attention to the fact that prior to the time in 2001 when Reinhold became the Plaintiff's supervisor, there were no performance complaints filed against

21

the Plaintiff. Additionally, the Plaintiff argues that during approximately eight years of the Plaintiff's employment with Teufel, the Plaintiff's co-workers did not complain about his performance.

The Court also observes that record reflects that the Defendant did recognize the Plaintiff's memory limitations in that the Defendant provided the Plaintiff with an office assistant and dictaphone. (Document No. 15, Exhibit A). In fact, the Defendant continued to accommodate the Plaintiff's alleged cognitive disability by providing at least six office assistants over a four-year time span. *Id.* Consequently, the Court finds Defendant's assertion that the "Plaintiff's alleged impairment, memory loss/cognitive functions, is not obvious" is disingenuous and conflicts with the evidence of record. The Court next addresses Defendant's claim that the Plaintiff is able to perform manual tasks around his home, pay his own bills, and live independently without accommodation, and that this evidence is proof that the Plaintiff is not disabled. (Document No. 16).

Initially, the Court notes that the reason, *inter alia*, the ADA statute was passed is "because Congress found 'the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous,' 42 U.S.C. § 12101(a)(9), not in order to provide piecemeal protection to only those with the most tragic or obvious impairments." *Emory*, 401 F.3d at 180; 42 U.S.C. § 12101(a)(9). Consequently, the Defendant's attention to what Plaintiff has managed to achieve is not the proper focus of the Court's inquiry; rather, "the paramount inquiry remains-- does [the Plaintiff] have an impairment that prevents or severely restricts [him] from doing activities that are of central importance to most people's daily lives"?

22

*Emory,* 401 F.3d at 181 (*quoting Toyota,* 534 U.S. at 197, 122 S.Ct. 681). In other words, the "crux of the inquiry lies in comparing the way in which [the plaintiff] is able to perform activities, if at all, with the way in which an average member of the general population performs the same activities." *Emory,* 401 F.3d at 181. If the plaintiff is substantially limited in the performance of such manual tasks, then the plaintiff has established that he is disabled under the ADA. *Id.* Therefore, "[w]hat a plaintiff confronts, not overcomes, is the measure of substantial limitation under the ADA." *Id.*

The Court observes that the record provides sufficient references to the substantial restrictions imposed by the Plaintiff's cognitive impairments. For example, approximately three weeks after May 22, 1979, the date of the automobile accident causing injury to the Plaintiff, the Plaintiff was diagnosed with "closed head trauma-cognitive issue". (Document No. 15, Exhibit A). The cognitive disability is expected to last for the remainder of the Plaintiff's life. *Id.*

Additionally, the Plaintiff testified that while he studied and took tests to earn his certificates, he required assistance to take exams. (Document No. 15, Exhibit A). For instance, when the Plaintiff took a test at Northeast Metro, the Plaintiff had to re-take the examination because at that time he was unable to pass the practical exam and written exam without assistance. *Id.* Thus, when questioned about his test performance, the testing officials permitted the Plaintiff to take the test in the office while verbally asking the Plaintiff the questions. *Id.* When the Plaintiff took the test receiving verbal questions and providing verbal answers, he was able to pass the test. *Id.*

Based upon the above-referenced evidence and the record in the case *sub judice,* the Court determines that the Plaintiff has provided sufficient evidence that his alleged cognitive impairment,

23

limits his ability to perform his duty as an orthotist as compared to the comparable skills and training of his co-workers. *See Peter*, 255 F.Supp.2d at 435; *Mondzelewski*, 162 F.3d at 784. Moreover, the Court finds that a genuine issue of material fact remains regarding whether the Plaintiff is "disabled" within the meaning of the ADA. Accordingly, the Court next addresses whether the Defendant can provide a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

**D.     Legitimate, Non-Discriminatory Reason**

The Defendant asserts that the Plaintiff repeatedly displayed performance problems at work (Document No. 16). For example, on August 17, 2001, Reinhold documented a complaint that he received from a patient regarding the Plaintiff's performance. *Id*. Reinhold noted the following:

> [The Plaintiff] kept putting off the delivery date and never went back to see the patient. The patient fell twice at his home because of not having his brace. The patient called our office and told Bob Teufel that he was going to sue us for the falls.

(Document No. 16, ¶ 40). Similarly, in another memorandum regarding the Plaintiff's performance, Reinhold documented the following on August 23, 2001:

> [The Plaintiff] set up an orthotic and prosthetic inservice for the Carlisle Hospital . . . He forgot the inservice . . . . This would have reflected very poorly on our company.

*Id*. at ¶ 47.

The Defendant also argues that several co-workers complained to Reinhold regarding the Plaintiff's performance at work. (Document No. 16). For instance, in September of 2001, a co-worker presented Reinhold with a patient complaint, stating that the Plaintiff "improperly fit [the brace] to the patient." *Id*. at ¶ 58. Other complaints were also provided to Reinhold regarding the Plaintiff's ability to properly fit patients with their required braces. *Id* at ¶ 63.

Accordingly, the Court determines that the Defendant has presented sufficient evidence of a legitimate, non-discriminatory reason for terminating the Plaintiff in order to rebut an inference of wrongdoing. Having satisfied the burden at step two of the *McDonnell Douglas/Burdine* framework, the Court next addresses whether the Plaintiff has presented evidence of pretext "from which a factfinder could reasonably either (1) disbelieve the [Defendant's] articulated legitimate reason, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller*, 130 F.3d at 1108.

E.   **Evidence of Pretext**

The Plaintiff argues the Defendant's legitimate, non-discriminatory reason for terminating him, i.e., poor performance problems stemming from the Plaintiff's failure to remember appointments and failure to properly document adjustment needs for patient braces, must be considered in conjunction with the Plaintiff's alleged cognitive disability. (Document No. 21). In other words, the Plaintiff claims that the limitations of his memory and his inability to recall certain events and dates caused him to sometimes perform poorly at work. *Id.*

Based upon the facts of the record, and based upon the Plaintiff's argument, the Court determines that it cannot analytically consider the Defendant's proffered legitimate reason for terminating the Plaintiff apart from the Plaintiff's alleged cognitive disability which may have caused the Plaintiff's poor performance. Accordingly, the Court reserves for the jury the issue of whether the Defendant's actions were based upon legitimate, non-discriminatory reasons. Therefore, the Court shall deny the Defendant's Motion for Summary Judgment, and an appropriate order follows.

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RANDALL T. KURTEN,            )
              Plaintiff,      )
                       )
                       )
       v.                    )       Civil Action No. 3:04-20J
                       )
HANGER PROSTHETIC and,        )
ORTHOTICS, INC., formerly known as   )
TEUFEL ASSOCIATES,            )
              Defendant.      )

### ORDER

     **AND NOW**, this 21ˢᵗ day of November, 2005, upon consideration of Hanger Prosthetics

and Orthotics, Inc., formally known as Teufel Associates, ("Defendant") Motion for Summary

Judgment (Document No. 14) pursuant to Federal Rule of Civil Procedure 56, and Randall T.

Kurten's ( "Plaintiff") Response to Motion for Summary Judgment (Document No. 20), based

upon the record in the case *sub judice*, and in accordance with the Memorandum Opinion, **IT IS**

**HEREBY ORDERED** that the Defendant's Motion for Summary Judgment is **DENIED**.


                                    **BY THE COURT**:


                                      UNITED STATES DISTRICT JUDGE
                                      The Honorable Kim R. Gibson


cc:    All counsel of record.